

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANIEL CORTES, ) | |
| ) | |
| Petitioner, ) | 07 C 727 |
| ) | |
| v. ) | |
| ) | |
| MARCUS HARDY, Warden, ) | Hon. Charles R. Norgle |
| Stateville Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Petitioner Daniel Cortes' Petition for Writ of Habeas Corpus. For the following reasons, the Petition is denied.

### I. BACKGROUND

Petitioner Daniel Cortes ("Cortes") is incarcerated at the Stateville Correctional Center in Joliet, Illinois, where he is in the custody of Respondent Marcus Hardy, the Warden of that facility. On December 29, 2004, the Illinois Appellate Court affirmed Cortes' conviction and fifty-one year sentence for the crimes of first degree murder and attempted first degree murder. As part of its decision to affirm, the Appellate Court summarized the factual background to this case as it was developed at Cortes' trial in the Circuit Court of Cook County, Illinois. People v. Cortes, No. 1-03-1802 (Ill. App. Ct. Dec. 29, 2004). The following facts must therefore be presumed correct for the purposes of this Court's habeas review. See 28 U.S.C. § 2254(e)(1).

At approximately 9:00 a.m. on November 20, 2001, William Pelmer and Joseph Miera were walking down the street near the intersection of Cermak Road and Wolcott Avenue in Chicago, Illinois, when a green Pontiac Grand Am pulled up next to them. Cortes, at 1-2. The driver was a Hispanic male with a shaved head, wearing a white "hoodie" sweatshirt. Id. at 2. The driver yelled "What's up bitches? Discip-O, Discip-O!" and made the hand sign of a pitchfork, the mark of the Satan's Disciples street gang. Id. at 4. Pelmer and Miera were members of the Almighty Ambrose street gang, and the two gangs were "at war." Id. at 3-4. The driver then pulled out a chrome semiautomatic gun which initially malfunctioned. Id. at 4. Pelmer and Miera dove behind separate cars. Id. Pelmer looked through a car window and saw the driver pull the gun out again. Id. Pelmer ducked, and heard three shots. Id. Miera, crouched behind another car, fell forward onto his knees, bleeding. Id. Miera had been struck in the face by one of the shots and died from his injuries. Id. at 5.

Chicago Police Officer Martin Acevedo and Detective Kevin Carney arrived on the scene that morning and Acevedo spoke to Pelmer, who explained the incident as outlined above. Id. at 2-3. Pelmer was later brought in for questioning, and he recounted the incident to Assistant States Attorney Michael Yoon. Id. at 4. Pelmer signed a written statement regarding the shooting following his interview with ASA Yoon. Id. at 4-5. Pelmer also explained the incident again that afternoon to Detective Carney, and also, in a separate interview, to ASA Kimellen Chamberlain. Id. at 3-5. That same day, Pelmer identified Cortes as the shooter from a photo array presented by Detective Carney. Id. at 3.

Following up on Pelmer's indication that Cortes had been driving a Pontiac Grand Am at the time of the shooting, Detective Carney conducted a search of registered vehicles with the

Illinois Secretary of State's Office, which indicated that a Pontiac coupe was registered to Cortes at a Chicago address. Id. Detectives went to Cortes' residence where they took him into custody and impounded the Grand Am they found there. Id. at 3-4. Investigators at the scene of the crime recovered three spent .380 caliber cartridge casings, matching the .380 caliber bullet recovered from Miera's body. Id. at 5-6. The murder weapon, however, was apparently not recovered. On November 26, 2001, Pelmer testified before the grand jury regarding the shooting. Id. at 5.

The State charged Cortes with first degree murder and attempted first degree murder. At trial, the State called Pelmer to testify. Trial Tr., Oct. 24, 2002, at 19. Pelmer began his testimony by acknowledging that he was presently in custody awaiting trial for first-degree murder. Id. He also answered various questions about his criminal background, and admitted that he had been friends with Miera. Id. at 19-21. However, Pelmer then refused to answer any of the State's questions about the shooting, testified that he had no knowledge regarding the incident, and denied (1) being with Miera at the time of the shooting, (2) speaking with Chicago Police Officers about the shooting, (3) signing a photo identifying Cortes, (4) picking Cortes out of a lineup, (5) providing a statement to ASA Yoon, and (6) testifying before the grand jury. Id. at 23-60; Cortes, at 2. Defense counsel did not cross-examine Pelmer. Cortes, at 2. The court then allowed the police officers and ASAs who had spoken with Pelmer during the investigation to testify regarding Pelmer's prior statements about the incident, including his identification of Cortes as the shooter. Id. at 1-5. The court also admitted the transcript of Pelmer's grand jury testimony, which was consistent with his previous accounts of the shooting. Id. at 5.

3

The court found Cortes guilty as charged, and sentenced him to a total of fifty-one years imprisonment. Id. at 1. The Appellate Court affirmed Cortes' conviction and sentence, finding, *inter alia*, that the trial court's admission of Pelmer's out-of-court statements was proper under sections 115-10.1 and 115-12 of the Illinois Code of Criminal Procedure (725 ILL. COMP. STAT. 5/115-10.1, 115-12), and related Illinois case law. Id. at 11-18. The Illinois Supreme Court denied Cortes' Petition for Leave to Appeal. People v. Cortes, 844 N.E.2d 41 (Ill. 2005). There is no indication in the record that Cortes pursued post-conviction relief in the state court.

Cortes filed the instant Petition for Habeas Corpus in the Northern District on February 6, 2007. Cortes asserts that the evidence introduced at trial was insufficient to convict, and that the means by which the State introduced its evidence constituted prosecutorial misconduct. The Petition is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Cortes' Petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which sets a high hurdle for habeas relief. The statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Before presenting a claim for habeas relief to a federal court, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). This includes petitions for discretionary review in States such as Illinois, where these petitions are "a normal, simple, established part of the State's appellate review process." Id.

> Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings. This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.

Lewis v. Sternes, 390 F.3d 1019, 1025-1026 (7th Cir. 2004) (internal citation omitted). Where a habeas petitioner fails to present his or her claims for one full round of state court review, the district court must deny the petition without considering its merits. Dressler v. McCaughtry, 238 F.3d 908, 912 (7th Cir. 2001); Lewis, 390 F.3d at 1026 ("A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim.").

A federal court may review procedurally defaulted claims only where the petitioner shows either "cause for his state-court default of *any* federal claim, and prejudice therefrom," or that the court's "failure to review his federal claim will result in a fundamental miscarriage of justice." Edwards v. Carpenter, 529 U.S. 446, 451 (2000). A "fundamental miscarriage of justice" is an extraordinary situation in which "a constitutional violation probably has caused the conviction of one innocent of the crime." Ward v. Hinsley, 377 F.3d 719, 725 (7th Cir. 2004) (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)).

5

### B. Cortes' Petition is Procedurally Defaulted

In his direct appeal to the Illinois Appellate Court, Cortes raised nine separate issues, one of which was insufficiency of the evidence. Cortes, at 8-9. He did not raise the issue of prosecutorial misconduct on direct appeal. Id. He did not raise insufficiency of the evidence or prosecutorial misconduct in his Petition for Leave to Appeal to the Illinois Supreme Court. Cortes' Pet. for Leave to Appeal, at 2-3. As the Court has noted, there is no indication in the record from either party that Cortes pursued state court post-conviction relief. Cortes has therefore procedurally defaulted both the issues he has raised in his instant habeas petition. See Lewis, 390 F.3d at 1025-1026; Dressler, 238 F.3d at 912.

### C. No Exception to the Procedural Default Rule Exists in this Case

Cortes does not assert that good cause exists for his failure to present the issues of insufficiency of the evidence and prosecutorial misconduct for a full round of state court review. Instead, he argues that a fundamental miscarriage of justice will occur if the Court does not reach the merits of his Petition. As the Court has noted, in order to establish that a fundamental miscarriage of justice will occur, Cortes must demonstrate that he is most likely innocent of the crimes of which he was convicted. See Ward, 377 F.3d at 725. This Cortes cannot do. Detective Carney testified that Pelmer identified Cortes as the shooter twice, and indicated that the shooter was driving a green Pontiac Grand Am. Cortes, at 3. Carney further testified that his investigation revealed that Cortes owned a green Pontiac Grand Am, and Chicago Police Officers discovered and impounded a green Pontiac Grand Am at Cortes' residence. Id. at 4. ASA Yoon testified that Pelmer signed a written statement recounting the entirety of the incident. Id. at 4-5. Pelmer's grand jury testimony, which was consistent with his statement to ASA Yoon, was

admitted into evidence. Id. at 5. Another police officer and another ASA also testified that Palmer described the shooting to them. Id. at 2-5. Given the entirety of the evidence presented against Cortes at trial, the Court cannot find that Cortes is likely innocent. See Ward, 377 F.3d at 725. No exception to the procedural default rule therefore exists in this case, and the Court cannot reach the merits of Cortes' Petition. See Edwards, 529 U.S. at 451.[1]

### III. CONCLUSION

For the foregoing reasons, Cortes' Petition for Writ of Habeas Corpus is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: Feb. 12, 2010

---

[1] To the extent that Cortes is asserting that it was error under Illinois law to admit this evidence, such a claim would not be cognizable in a federal habeas petition. Dellinger v. Brown, 301 F.3d 758, 764 (7th Cir. 2002) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").